Wheeler, D. J.
This bill is brought for relief against an alleged infringement of letters patent No. 61,172, dated January 15, 1867, to Thomas B. De Forest, for an improvement in binding for skirts, and now owned by plaintiff.
The defences set up in the answer are that the defendant, the rubber company, is operating under a patent, No. 155,134, dated September 20, 1874, to Helen Marie MacDonald, for -an improvement in dress protectors, and that they do not infringe the, plaintiff’s patent.
While the application of MacDonald was pending an interference was declared between her and one Chase, in the *571 decision upon which Mr. Commissioner Leggett expressed an opinion that her invention dated back to 1861. MacDonald v. Chase, 6 Off. Gaz. 359.
Afterwards she brought a bill in the circuit court for the district of Massachusetts for an infringement of her patent, and in that case it was found, upon the evidence, by Shepley J., that she was the first inventor of the skirt protector described in her patent. The case was afterwards opened for the introduction of the De Forest patent, and, upon the case as presented with that patent in evidence, Lowell, J., found that her invention was made in 1861, before the patent of De Forest.
In the subsequent cases of MacDonald v. Shepard, in the •district of Massachusetts, and MacDonald v. Sidenberg, in this district, on motions for preliminary injunctions, the decisions in the former case were followed by Lowell, J., there, and Blatchford, J. here, and temporary injunctions ordered. None of the evidence on which those findings were based in any of those cases has been reproduced in this case, nor have the defendants even set up any prior knowledge or invention, •or use, in their answers to defeat the patent of De Forest.
On the hearing they have produced copies of the opinions filed in those cases, and argued that those decisions conclusively settle that MacDonald’s invention was prior to De Forest’s. None of the parties to this suit were parties to any of those; neither is it shown that any of these parties are privies to those, and it is elementary that judgments and decrees, in order to be conclusive evidence of facts, or evidence at all in other proceedings, must be between the same parties, •or privies to them. These decisions and opinions are authorities for all similar cases, but not estoppels in any, except •such as may arise between those very parties, or others •claiming under them. This case stands upon its own evidence, which shows nothing prior to the plaintiff’s patent, except that Miss MacDonald was asked by the defendants, expressly ^disclaiming any intention of proving prior knowledge of De Forest’s invention, when she commenced experimenting in water-proof skirt protectors, and answered in 1861; and, *572 further, that she made skirt protectors of water-proof material and attached them to the skirt, so as to extend below the lower edge as a protection to the lower part of the skirt and braid, and wore them in that year. There is nothing to impeach the prima facie effect of the patent itself, and it must be treated as valid, and be construed in the light of this testimony of Miss MacDonald as to prior existing devices, which is not contradicted, for the purpose of ascertaining how much it-will cover, and whether what the defendants have done will come within its scope.
The patent is for, among other things, a band of India rubber or other flexible material, placed upon and attached to the outer surface at the lower edge of what is called the binding to the inside of the skirts of ladies’ dresses at the bottom, to protect the dress at the edge, and it is mentioned that the binding itself may be coated with India rubber, thinly, and rendered water-proof. It is said that the binding proper of a dress is wrought in with the facing, and becomes a part of the dress itself, all of which is protected by a skirt protector proper; and that the invention is confined to bindings, and has nothing to do with skirt protectors. But the whole description in the patent is to be looked at, as well as the name given to the subject of the invention, in order, according to the settled rule for the construction of all writings, to give effect to every part, and ascertain from the whole what is meant. The drawings are referred to as showing ing the different forms of his constructions enlarged. Some of the witnesses for the defence have treated that part as meaning that the whole binding is represented as enlarged, and therefrom have concluded that the binding would be very narrow, and only apply to the extreme edge of the skirt; but it is not so understood here. The new parts are represented enlarged, and what is called the binding improved upon is represented in various widths, and being a mere sheet of material could be of any desired width. The form carrying the band of rubber could not be used as ordinary proper binding is, for the band would be put out of place for the purpose it was for by such use. It could be used as an extra binding to *573 protect the edge of the skirt according to its design. This band upon an inside strip of material, which might be itself made water-proof, to protect the edge of the skirt, is what was patented, by whatever name it was or might have been called. In the MacDonald patent her device was, in one place, called a skirt facing or protector, which shows that the names of those parts of a dress were not used at all times with exact discrimination. Her protector would, in some sense, be a sort of extra facing. She afterwards disclaimed facings as a part of her patent, which might affect the patent and might not, but it would not affect the use of the language employed to express her ideas. Her testimony is understood as meaning that the skirt protectors she wore before De Forest’s patent were similar to those she afterwards patented. .These were made of plain water-proof fabric, gathered into plaits or fluting. Judges Blatchford and Lowell are understood to have held that the plaiting and fluting are merely modes of finish, and that the real thing she invented was the plain water-proof strip, finished in either of those modes, or any other desired for the purpose of a skirt protector. Such strips were in existence when De Forest took his patent; he recognized them in his patent, and his patent was for an improvement upon them, and similar things. His patent, as this ease has been presented, is valid for that improvement, consisting of such a band placed upon and fastened to the lower edge of such strips of material on the inside of the skirts of dresses at the bottom, for additional protection.
The evidence shows that the defendant the Combination Rubber Company, of which the defendant Greacen is president, has made and sold for use strips of water-proof material with exactly this improvement. Some of the bands have very shallow creases across them, which some of the witnesses call fluting, as if they were like the fluting of Miss' MacDonald’s protectors and patent, and made such bands different from those of De Forest. This distinction is without foundation. The fluting of her patent has an office to perform in giving a hang to the skirt, and must be made by gathering the material into open folds, as flutings of such sort are usually *574 made, and is more than such configuration as these creases-make, which has no effect except upon the appearance of the-material before or when not in use. The defendants infringe by the use of these bands, as well as by the use of the plain ones.
Let a decree be entered establishing the validity of the patent, and the infringement of the defendants, and for an. injunction, and an account accordingly, with costs.